UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Louise Schutz, as duly appointed
Trustee of the Heirs and Next-of-Kin
of David P. Schutz, Decedent,

        Plaintiff,

        v.

United States of America,[1]

        Defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OPINION AND ORDER FOR JUDGMENT**
Civil No. 04-3081 ADM/RLE

_____

Mark N. Stageberg, Esq., Stageberg Law Office, Minnetonka, MN, for and on behalf of Plaintiff.

Patricia R. Cangemi, Esq., Assistant United States Attorney, Minneapolis, MN, and Jason Rudie, Esq., Department of Veteran's Affairs, Minneapolis, MN, for and on behalf of Defendant.

_____

## I. INTRODUCTION

The above-titled matter came on for trial before the undersigned United States District Judge on June 24, 2005, pursuant to Plaintiff Louise Schutz ("Plaintiff"), as duly appointed Trustee of the Heirs and Next-of-Kin of David P. Schutz's ("Schutz") wrongful death claim against the United States of America ("Defendant"). Specifically, the Complaint [Docket No. 1] alleges the Department of Veteran Affairs ("VA") failed to provide Schutz with prescriptive medicine necessary to treat a heart ailment, thereby causing a stroke, and ultimately, Schutz's death. As dictated by the Federal Tort Claims Act ("FTCA"), the case was tried to the Court. For the reasons set forth below, the Court finds in favor of Defendant, and Plaintiff's Complaint

---

[1] Plaintiff, suing under the FTCA, incorrectly named the Department of Veteran's Affairs of the United States of America as defendant in her Complaint. At trial, the parties consented to amendment of the caption to reflect the correct defendant.

is dismissed with prejudice.

## II. FINDINGS OF FACT

1.      David P. Schutz was born on March 11, 1925, and died on November 29, 2002 at the age of 77.  Def's Ex. 1.

2.      On December 22, 2003, Plaintiff filed an Administrative Claim, S.F. 95 for the alleged wrongful death of Schutz, alleging the dates of October 10, 2002 and November 28, 2002 as incident dates.[2]  Id.

3.      Schutz was a regular smoker for fifty years, consuming one pack per day until August 3, 2001.  After that time, Schutz continued to smoke at a reduced rate.  Payne Dep. at 45-46.

4.      Plaintiff alleges that on or about October 10, 2002, Schutz ran out of a medicine prescribed to him named "Warfarin."[3]  Warfarin is an anticoagulant, or blood thinner.  Schutz had been prescribed Warfarin for a number of medical conditions, including atrial fibrillation, coronary artery disease, and chronic obstructive pulmonary disease.  The Veteran's Administration Hospital in St. Cloud (the "St. Cloud VA") monitored his therapy from 1999 until Schutz's death.  Def's Ex. 9.

5.      From January 2002 through June 2002, Schutz had monthly appointments to track his response to Warfarin.  Schutz cancelled his July 2002 appointment, but appeared for his

---

[2] It is unclear why November 28, 2002 is listed as an incident date; presumably, this is a mistake, with the intended date of November 29, 2002.

[3] Throughout the trial, Schutz's medication was alternately referred to as "Warfarin" and "Coumadin."  Coumadin is a brand name for Warfarin.  Here, all references will be to Warfarin; however, the two terms are interchangeable for purposes of this decision.

August 2002 appointment. In August 2002, Schutz's international normalized ratio ("INR"), a measure of blood thickness, was 5.0. Ideally, the INR reading should be between 2.0-3.0. As a result, Dr. Dirck Curry ordered Schutz to go without Warfarin for two days, and then to lower his dosage to 2.5 mg. On August 5, 2002, Schutz was mailed a 64 day supply of Warfarin. At his September 2002 examination, Schutz's INR was 2.1. Id.

6. According to Plaintiff, Schutz returned from the St. Cloud VA on October 10, 2002, complaining that the St. Cloud VA had "run out" of Warfarin, and he would have to receive it by mail. No record reflects a request for more Warfarin on this day, however. Trial testimony of Louise Schutz.

7. There is no evidence to suggest the St. Cloud VA ran out of Warfarin in the time period alleged by Plaintiff. Thomas Ramsey, Director of Pharmacy Services at the St. Cloud VA, testified that the St. Cloud VA had not run out of Warfarin during his tenure. Trial Testimony of Thomas Ramsey.

8. The St. Cloud VA provides patients with "interim fills" of important medications if a patient's prescription has expired. Curry Dep. at 20.

9. Prior to his death, Schutz regularly ordered Warfarin by mail. The prescriptions were processed and delivered by a centralized system known as the Consolidated Mail-Out Program ("CMOP"). Def's Ex. 7.

10. On October 24, 2002, the St. Cloud VA received a refill request from Schutz for Warfarin. The prescription was processed and mailed to Schutz on October 26, 2002. Id.

11. On October 31, the St. Cloud VA received another request from Schutz for Warfarin. This order was put on hold, as the first order had been mailed just a few days prior to

this request.  Id.

12. On November 6, 2002, Schutz suffered a stroke.  He was admitted to the St. Cloud Hospital, where he remained until November 19, 2002.  Def's Ex. 10; Payne Dep. at 25-26.

13. On November 19, 2002, Schutz was transferred to the Foley Nursing Home. Until November 26, 2002, Schutz remained able to communicate, with difficulty, with his wife and care givers.  Payne Dep. at 33, 66.

14. During his stay at the Foley Nursing Home, Schutz was given 7.5 mg dosages of Warfarin on November 19 and 20, 2002, which was three times his normal intake of 2.5 mg. Def's Ex. 11.

15. Schutz's INR reached 6.8 on November 21, 2002, well above the normal 2.0-3.0. A high INR can lead to bleeding or hemorrhaging.  As a result, Schutz's Warfarin intake was halted.  Id.

16. Following a deterioration in his condition, Schutz suffered an "acute cerebral vascular accident," or stroke, on November 26, 2002.  Schutz died three days later on November 29, 2002.  Def's Ex. 3.

17. Dr. Kevin Stiles, M.D., both treated Schutz and was the coroner following Schutz's death.  The death certificate lists the cause of death as "acute cerebrovascular accident." No contributing conditions were listed on the death certificate.  Id.

### III. CONCLUSIONS OF LAW

1. Defendant had no duty to monitor Schutz's supply of Warfarin.

2. Defendant did not breach any duty of care to the Plaintiff or Schutz.

3.     Even assuming, *arguendo*, that Defendant had such a duty, because Schutz failed to notify the VA that his Warfarin supply was low, Defendant was not the proximate cause of Schutz's death.

## IV. ANALYSIS

Plaintiff has brought her case under the FTCA, alleging the VA negligently failed to provide Schutz with necessary medication. Specifically, Plaintiff claims Schutz told her upon his return from the St. Cloud VA on October 10, 2002 that the St. Cloud VA could not fill his prescription because they were out of Warfarin, an anticoagulation medicine prescribed to Schutz. As a result, according to Plaintiff, Schutz went without Warfarin for some time. Although he did eventually receive the Warfarin, Schutz suffered a stroke on November 6, 2002, from which he never fully recovered. Schutz suffered a second stroke on November 26, 2002, which ultimately caused his death three days later on November 29, 2002.

The major fact issue in dispute relates to Schutz's alleged request at the St. Cloud VA for Warfarin on October 10, 2002. Defendant argues no records or evidence exist to suggest Schutz requested additional medication on October 10, 2002. Defendant also contends that if Schutz had indicated to anyone at the St. Cloud VA at any time that he was out of Warfarin, they would have furnished him with an interim supply of the drug until his prescription was filled. Defendant avers that Schutz's failure to inform anyone at the VA of the fact that he had run out of Warfarin absolves Defendant from liability. Defendant also claims that it is unclear whether the cause of Schutz's first stroke on November 6, 2002 was due to the lack of Warfarin or due to his age and poor health. Finally, Defendant contends that even if the November 6, 2002 stroke was a result of Defendant's negligence, the care Schutz received at the Foley Nursing Home

constitutes a superceding, intervening cause of Schutz's death.

Plaintiff's negligence claims are analyzed under the laws of Minnesota, as the events in question undisputedly occurred in Minnesota.  28 U.S.C. § 1346(b)(1); see Cent. Airlines, Inc. v. United States, 169 F.3d 1174, 1175 (8th Cir. 1999).  In Minnesota, negligence has four elements: "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury."  Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995).  Here, Plaintiff claims Defendant breached its duty of care to Schutz by failing to provide him with Warfarin when he ran short of the drug on October 10, 2002.  During the trial, Plaintiff also advanced the theory that even in the absence of notice by Schutz that he was out of Warfarin, Defendant had a duty to monitor his supply of the drug.  However, under either theory, Plaintiff is unable to demonstrate a breach of duty or causation.

Plaintiff is unable to demonstrate a breach of duty or causation because the evidence adduced at trial does not permit a credible inference that Schutz requested Warfarin on his October 10, 2002 trip to the St. Cloud VA.  The only evidence proffered relating to Schutz's alleged requests is the testimony of Plaintiff, who claimed Schutz told her upon his return home to Foley, Minnesota on October 10, 2002, that the St. Cloud VA was out of Warfarin and he was instructed he would have to wait for the Warfarin by mail.  Trial Testimony of Louise Schutz. Plaintiff further alleges that Schutz was without his Warfarin for approximately one week following October 10, 2002, but then received his prescription by mail.  Id.  The testimony of Plaintiff is consistent with her S.F. 95 complaint form.  However, no evidence exists to support Plaintiff's theory, and additionally, her own testimony is inconsistent with prior statements she has made.

Schutz's records from the St. Cloud VA do not indicate Schutz requested Warfarin on October 10, 2002, nor do they suggest Schutz informed the St. Cloud VA that he was running low on or was completely out of Warfarin.  Ex. 9.  Moreover, Schutz's records at CMOP do not indicate that he requested a refill of Warfarin until October 24, 2002, which conflicts with Plaintiff's theory that Schutz received additional Warfarin roughly a week after October 10, 2002.  Compare Def's Ex. 7 and Def's Ex. 1.  Furthermore, Plaintiff's recollection of when Schutz ran out of Warfarin, and the dosage he took, is inconsistent or incorrect.  For example, at the time of Schutz's first stroke on November 6, 2002, Plaintiff told Dr. Troy Payne that Schutz had been without Warfarin starting approximately a week and a half before the stroke, which is well after October 10, 2002.  Payne Dep. at 14.  Plaintiff also informed Dr. Payne that Schutz had received and was taking his Warfarin prescription for a few days prior to suffering the stroke.  Id. at 14-15.  Additionally, Plaintiff informed Dr. Payne that Schutz had been taking 5 mg of Warfarin per day, when in fact, Schutz had most recently been on a 2.5 mg regimen of Warfarin.  Id. at 36-37, 48-49.  Despite Plaintiff's recitation of the Schutz's drug regimen to Dr. Payne, Plaintiff admitted at trial that she was not sure of all the drugs Schutz took, further demonstrating the inconsistency of her memory.  Trial Testimony of Louise Schutz.

Although several expert depositions were submitted in this case, none demonstrate that Schutz was without his medication due to a failure of the St. Cloud VA.  Plaintiff's key witness, Dr. Payne, testified that the November 6, 2002 stroke may have been caused by a lack of Warfarin for a week long period.  Id. at 16.  However, as noted previously, Dr. Payne based his testimony on the unreliable statements of Plaintiff that Schutz was without Warfarin for a week long period beginning approximately a week and a half prior to the stroke.  Id. at 14-15.

Furthermore, Dr. Payne admitted that any number of factors may have contributed to Schutz's stroke, including Schutz's long history of smoking. Id. at 39-42. Because Dr. Payne's testimony is based upon unreliable information, his own testimony fails to convince the Court that Schutz's November 6, 2002 stroke was caused by a lack of Warfarin.

Even if one were to accept Dr. Payne's theory that a lack of Warfarin caused Schutz's November 6, 2002 stroke, Schutz's failure to notify anyone at the VA that he was without Warfarin breaks the chain of causation. The evidence proffered at trial is replete with testimony that if Schutz had informed the VA he was out of Warfarin, the VA would have been able to supply Schutz with Warfarin until his prescription could be filled. Curry Dep. at 20; Trial Testimony of Thomas Ramsey. Moreover, there is no indication that the St. Cloud VA ever ran out of Warfarin, a common drug. Because there is no evidence that Schutz made a request for Warfarin that was denied, Plaintiff's case must fail.

Finally, as to Plaintiff's theory that the VA had a duty to monitor Schutz's drug supply, Plaintiff is unable to cite any authority to suggest that the VA had a duty to continually monitor Schutz's Warfarin supply to ensure he had sufficient dosages. Practically speaking, such a duty would impose upon health care professionals an incomprehensibly high level of responsibility to monitor every patient's drug supply. In the absence of facts demonstrating a denial of a request for medication, no duty has been breached.

## V. ORDER FOR JUDGMENT

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Court finds in favor of Defendant United States of America; and

2. Plaintiff Louise Schutz's Complaint [Docket No.1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 2, 2005.